UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AT&T CORP., ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-0655-LJM-WTL |
| ) | |
| MERCHANTWIRED L.L.C., ) | |
|     Defendant. ) | |

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This case is before the Court on Plaintiff's, AT&T Corp. ("AT&T"), and Defendant's, MerchantWired L.L.C. ("MerchantWired"), cross Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.[1] Specifically, four issues related to AT&T's breach of contract and quantum meruit/unjust enrichment claims against MerchantWired are presented in the cross Motions for Summary Judgment: 1) How the payments made by MerchantWired should be applied to its indebtedness to AT&T under the two agreements between the parties; 2) What amount, if any, allegedly owed by MerchantWired is barred by the statute of limitations; 3) Whether or not MerchantWired is liable to AT&T for amounts allegedly due on accounts in the name of entities other than MerchantWired; and 4) Whether or not AT&T's quantum meruit claim should be dismissed.

As set forth below, AT&T's Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and MerchantWired's Motion for Summary Judgment is **GRANTED in part and DENIED in part.**

---

[1] S.D. Ind. L.R. 56.1. Amends. through Jan. 1, 2006.

## I. BACKGROUND

MerchantWired was a company in the business of reselling telecommunications services. On October 18, 2000, MerchantWired and AT&T signed Master Agreement number MA101271 ("Master Agreement"), in which AT&T agreed to provide MerchantWired with telecommunications services. The Master Agreement provided, among other things, that New York law would govern any disputes regarding interpretation of the Master Agreement. *Compl., Ex. B §13.6.* AT&T provided services to MerchantWired from 2000 until 2002. However, AT&T alleges that toward the end of the relationship, MerchantWired breached the Master Agreement by failing to make payment for services AT&T provided.

MerchantWired planned to, and eventually did, go out of business on September 3, 2002. *Aff. of Guiliano, ¶ 2.* MerchantWired and AT&T entered into an agreement on June 18, 2002, relating to the provision of and payment for services to be provided by AT&T through the closure of MerchantWired on September 3, 2002, among other things. The June 18, 2002, Agreement provided in relevant part:

> 1. MerchantWired will make a pre-payment of $850,000 for service to be provided by AT&T under our existing contracts to AT&T by wire transfer on June 19, 2002, which is the cost for June's service under our existing contracts.
>
> 2. MerchantWired will make a pre-payment of $700,000 on or before July 5th for July services under all existing contracts.
>
> 3. MerchantWired will make a pre-payment of $700,000 on or before August 5th for August services under all existing contracts.
>
> 4. Provided MerchantWired complies with the payment obligations in paragraph 1, 2, and 3, AT&T will continue to provide the services at the current level of quality through September 3, 2002.

* * *

> 7. AT&T acknowledges that it will not bill customers for any existing MerchantWired/AT&T circuit until September 1, 2002, all prior services to be paid pursuant to this agreement. However, AT&T may immediately begin negotiating with MerchantWired's customers.

*June 18, 2002, Agreement, Ex. 4.* MerchantWired timely made the three payments provided for by the June 18, 2002, Agreement.

AT&T now claims that it is entitled to damages as a result of MerchantWired's alleged breach of contract for nonpayment for AT&T services. However, MerchantWired contests its liability for some of the charges and contends that any breach of contract claim AT&T would have otherwise had is barred in part by the statute of limitations and in part by the express terms of the parties' June 18, 2002, Agreement.

## II. STANDARD

Summary judgment is only to be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. To determine whether any genuine factual issue exists, the Court examines the pleadings and the proof as presented in depositions, answers to interrogatories, admissions, and affidavits made a part of the record. *First Bank & Trust v. Firstar Info. Servs., Corp.*, 276 F.3d 317, 321 (7th Cir. 2001). The Court also draws all reasonable inferences from undisputed facts in favor of the non-moving party and views the disputed evidence in the light most favorable to the non-moving party. *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).

The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *JPM Inc.*

*v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). However, the non-moving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must go beyond the pleadings and support his contentions with properly admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the non-moving party fails to establish an essential element of his case, summary judgment is appropriate. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

### III. DISCUSSION

#### A. ORGANIZATION OF MERCHANTWIRED'S DEBT

The first two issues presented before the Court are related because the order in which MerchantWired's payments are applied to its indebtedness to AT&T will determine whether a breach of contract action for amounts allegedly owed by MerchantWired is barred by the statute of limitations. Accordingly, the Court addresses both of these issues here.

AT&T contends that all payments made by MerchantWired should be applied to the MerchantWired account in the order the charges were incurred, with all payments applying first to the earliest charges. *Pl.'s Mem. of Law in Supp. of Mot. for Summ. J., p. 7 ("Pl.'s Mem.")*. This approach would likely result in none of AT&T's claims being barred by the statute of limitations. MerchantWired contends that each invoice should be treated separately, such that payments made by MerchantWired should not be applied to old, outstanding balances first. *Def.'s Opp'n to Pl.'s*

4

*Mot. for Summ. J., p. 4-6 ("Def.'s Opp'n").* Furthermore, MerchantWired contends that in accordance with the express terms of the parties' June 18, 2002, Agreement, its payments of $850,000.00, $700,000.00, and $700,000.00 were payment in full for the services AT&T provided to MerchantWired in June, July, and August of 2002, respectively, and cannot be applied to its earlier indebtedness. *Def.'s Opp'n, p. 7-8.* This approach would likely result in a substantial portion of AT&T's claim being barred by the statute of limitations. AT&T contends that the June 18, 2002, Agreement provides for continued services based upon a guaranteed payment schedule, but that these payments were not intended to be payment in full for June, July, and August services and that there is no reference in the agreement for how such payment is to be applied. *Pl.'s Mem., p. 10-12.*

For the reasons set forth below, summary judgment is **GRANTED** in favor of MerchantWired regarding its payments of $850,000.00, $700,000.00, and $700,000.00 in June, July, and August 2002, respectively, which should be applied as payment in full for the services AT&T provided to MerchantWired in those months. Summary judgment is **GRANTED** in favor of AT&T regarding the application of all other payments made by MerchantWired, which should be applied to the MerchantWired account in the order the charges were incurred, with the oldest account balances being paid first. Summary judgment is **DENIED** on the issue of what amount, if any, allegedly owed by MerchantWired is barred by the statute of limitations because genuine issues of material fact exist.

As a general rule, a debtor has the right to direct the application of payment to a specific debt, but where neither the debtor nor creditor specifies to which debt payments are to be applied, the funds will be applied to the earliest indebtedness. *See, e.g.*, *Werner v. Werner*, 176 Misc. 2d 299, 303-304 (N.Y. Sup. Ct. 1998) (child support payment in arrears were applied to oldest debts, court upheld the application stating: "Generally a debtor making payment to a creditor to whom he owes

more than one obligation has the right to direct the application of payment to a specific debt . . . . But where the debtor has made no specific allocation the creditor can allocate the payment as he wishes 'and to [his] best advantage' . . . . In the absence of an election by either party, a court may make such application as equity and justice require, and with regard to the presumption that payment is applied to that portion of the debt first becoming due . . . ."); *Beyer Bros. of Long Island Corp. v. Kowalevich*, 89 A.D.2d 1005 (N.Y. App. Div. 1982) (in the absence of a designation by the debtor or creditor, the court will make such designation as equity and justice require, and, "usually, the funds will be applied to the debts in the order of time in which they stand in the account"); *N.Y. Tele. Co. v. State,* 130 Misc. 2d 575, 579 (N.Y. Ct. Cl. 1985) ("A debtor . . . has the right to direct the application of a payment to a specific debt."). Determining whether MerchantWired directed application of its payments to a specific debt necessitates examination of the parties' written agreements. Construing an unambiguous contract provision is a function of the Court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument. *See Teitelbaum Holdings, Ltd. v. Gold,* 396 N.E.2d 1029, 1032 (N.Y. 1979). A court may not rewrite a term of a contract when the term is clear and unambiguous. *See Fiore v. Fiore,* 389 N.E.2d 138, 139 (N.Y. 1979); *DeVanzo v. Newark Ins. Co.*, 44 A.D.2d 39, 43 (N.Y. App. Div. 1974), *aff'd*, 337 N.E.2d 131 (N.Y. 1975). Further, the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency. *See Laba v. Carey*, 277 N.E.2d 641 (N.Y. 1971); *Nat'l Conversion Corp. v. Cedar Bldg. Corp.,* 246 N.E.2d 351, 354 (N.Y. 1969); *see also Cruden v. Bank of N.Y.,* 957 F.2d 961, 976 (2d Cir. 1992).

The written agreements the Court must look to in this case for determining whether MerchantWired directed application of its payments to a specific debt are the Master Agreement and

June 18, 2002, Agreement. The parties' Master Agreement is silent as to how payments by MerchantWired are to be applied, but the June 18, 2002, Agreement provides in relevant part:

> 1. MerchantWired will make a pre-payment of $850,000 *for service to be provided by AT&T under our existing contracts* to AT&T by wire transfer on June 19, 2002, *which is the cost for June's service under our existing contracts*.
>
> 2. MerchantWired will make a pre-payment of $700,000 on or before July 5th *for July services under all existing contracts*.
>
> 3. MerchantWired will make a pre-payment of $700,000 on or before August 5th *for August services under all existing contracts*.
>
> 4. Provided MerchantWired complies with the payment obligations in paragraph 1, 2, and 3, AT&T will continue to provide the services at the current level of quality through September 3, 2002.
>
> * * *
>
> 7. AT&T acknowledges that it will not bill customers for any existing MerchantWired/AT&T circuit until September 1, 2002, *all prior services to be paid pursuant to this agreement.* However, AT&T may immediately begin negotiating with MerchantWired's customers.

*June 18, 2002, Agreement, Ex. 4* (emphasis added).

Because the parties' June 18, 2002, Agreement provided for the application of payments to specific debts, payments made in accordance with the June 18, 2002, Agreement must be applied as provided for in that agreement. The express terms of the June 18, 2002, Agreement unambiguously provide that the payments of $850,000.00 in June, $700,000.00 in July, and $700,000.00 in August 2002 were to be made in exchange for services provided by AT&T during those months. Because MerchantWired, as the debtor, had the right to direct the application of those payments to the specific debts incurred in those months, AT&T cannot apply those payments to other charges instead, even if those other charges were incurred earlier in time because such an application would be in contravention to the express terms of the June 18, 2002, Agreement.

7

Furthermore, the June 18, 2002, Agreement unambiguously provides that the payments of $850,000.00, $700,000.00, and $700,000.00 in June, July, and August 2002, respectively, were payment in full for those months. According to the express language of the agreement, the payment of $850,000.00 in June was the cost "for June's service under [the parties'] existing contracts," the payment of $700,000.00 in July was payment "for July services under all existing contracts," and the payment of $700,000.00 in August was payment "for August services under all existing contracts." *Id.* The June 18, 2002, Agreement also expressly provides that all services from the time of the June 18, 2002, Agreement until September 1, 2002, were "to be paid pursuant to this agreement." *Id.* This contract language clearly and unambiguously indicates the parties' intent for these payments to be payment in full for June, July, and August 2002 AT&T services. It is undisputed that MerchantWired timely made the payments required under the June 18, 2002, Agreement. *Aff. of Guiliano, ¶ 5; Reconciliation for Accounts, Attached to Ex. 2, Aff. of Gritchen.* Thus, AT&T is not entitled to charge any additional amounts for services rendered in June, July, or August 2002 because such additional charges would contravene the express terms of the June 18, 2002, Agreement.

Conversely, because the parties' Master Agreement does not specify how payments are to be applied to MerchantWired's account, for all other payments made by MerchantWired, the Court will apply the general rule that where neither the debtor nor creditor specifies to which debt payments are to be applied, the funds will first be applied to the earliest indebtedness. Equitable reasons supporting non-application of this rule are not present in this case.[2] If MerchantWired did

---

[2] MerchantWired did not provide the Court with any equitable reasons why this general rule should not be applied. Furthermore, deposition testimony by Mr. Ed Beek indicates that the application of payments made on an account to the earliest past due invoice amount is consistent with AT&T's standard practice. *Dep. of Beek, at 24-25.*

not want its payments applied to the charges in the order the charges were incurred, it could have directed its payments to be applied differently in the Master Agreement or at the time payment was made, just as MerchantWired did in its June 18, 2002, Agreement, but MerchantWired did not do so. MerchantWired cannot now be permitted to apply its payments to charges incurred later in time in order to take advantage of the statute of limitations deadline, just as AT&T would not be permitted to apply payments to charges incurred later in time in order to accrue more interest on earlier missed payments.

Having resolved how MerchantWired's payments are to be applied, the Court now turns to the statute of limitations issue. The parties agree that the applicable statute of limitations period governing this dispute is set forth in Section 13.4 of the Master Agreement, which provides that "any legal action arising in connection with this Agreement must begin within two (2) years after the cause of action arises." *Compl., Ex. B § 13.4*. A cause of action on an invoice arises when the invoice is past due, or when payment was demanded and refused. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1100 (3rd Cir. 1995). Section 2.3 of the parties' Master Agreement states that payment "is due within thirty (30) days after Customer's receipt of an invoice . . . ." *Compl., Ex. B § 2.3*. Therefore, the unambiguous language of the Master Agreement makes it clear that a cause of action resulting from an unpaid charge would arise thirty days after MerchantWired's receipt of a particular invoice.[3] *See MCI Telecomm.*, 71 F.3d at 1100 (where the governing tariff

---

[3] Beginning accrual of the statute of limitations for nonpayment of an invoice only after a thirty day time period elapses is also consistent with the common law of New York. A cause of action for breach of contract arises under New York law when there has been a breach, or in other words, when the plaintiff possesses a legal right to demand payment owed under the contract. *See Ely-Cruikshank Co., Inc. v. Bank of Montreal et al.*, 615 N.E.2d 985, 986 (N.Y. 1993) ("Generally, any Statute of Limitations begins to run when a cause of action accrues. In New York, a breach of contract cause of action accrues at the time of the breach."); *Albany Specialties Inc. v. Shenendehowa Cent. Sch. Dist.*, 307 A.D.2d 514, 516 (N.Y. App. Div. 2003)

provided that "amounts not paid within 30 days after the date of the invoice will be considered past due[,]" the court gave those words "their ordinary meaning" and held that because the customer's "obligations became past due 30 days after the date of a particular invoice[, i]t is therefore only then that [the telephone service provider's] cause of action . . . accrued, and it is at that point that the two year clock started ticking"). AT&T filed its lawsuit on April 9, 2004. Accordingly, AT&T is time barred from bringing claims for unpaid charges in connection with the Master Agreement that arose, or in other words were "past due," prior to April 9, 2002.[4]

However, genuine issues of material fact exist regarding the amount, if any, that AT&T claims is due from MerchantWired that is attributable to invoices that were past due prior to April 9, 2002. Such a computation would necessitate applying the payments made by MerchantWired prior to the June 18, 2002, Agreement and subsequent to the June 18, 2002, Agreement in excess of the amounts provided in that agreement to the earliest outstanding MerchantWired account balances; applying the amounts paid by MerchantWired in accordance with the June 18, 2002, Agreement in full satisfaction of the cost of AT&T services for the months of June, July, and August 2002; and resolving the issue of which accounts in names other than "MerchantWired" MerchantWired is nonetheless liable for (discussed below in this Order in the section entitled "Accounts in Names

---

("a cause of action accrues and the statute of limitations begins to run in contract actions from the time of the breach, which occurs when the plaintiff possesses a legal right to demand payment"); *Levy v. T.P. Luss & Co.*, 267 A.D.2d 213 (N.Y. App. Div. 1999) (noting that under New York law, a cause of action based on contract accrues upon the occurrence of the breach). This has long been the law in the telecommunications area as well. *Hare v. N.Y. Tel. Co.*, 101 Misc. 490, 494 (Cty. Ct. N.Y. 1917) (holding that a breach of contract for telephone services occurred when the subscriber failed to pay in advance for the next month's service).

[4] Additionally, both parties are in agreement that any amounts AT&T seeks to recover must not have been "past due" prior to April 9, 2002, in order to still be actionable. *Pl.'s Mem., p. 7; Def.'s Br. in Supp. of Mot. for Summ. J., p. 9.*

Other Than MerchantWired"). Because it is impossible for the Court to make this computation at this time, summary judgment is **DENIED** on the issue of what amount, if any, allegedly owed by MerchantWired is barred by the statute of limitations.

In summary, the Court **GRANTS** summary judgment in favor of MerchantWired regarding its payments of $850,000.00 in June 2002, $700,000.00 in July 2002, and $700,000.00 in August 2002, which are to be applied as payment in full for the services AT&T provided to MerchantWired in June, July, and August 2002. The Court **GRANTS** summary judgment in favor of AT&T regarding the application of all other payments made by MerchantWired, which should be applied to the MerchantWired account in the order the charges were incurred, with the oldest account balances being paid first. Summary judgment is **DENIED** on the issue of what amount, if any, allegedly owed by MerchantWired is barred by the statute of limitations because genuine issues of material fact exist.

### B. LIABILITY FOR ACCOUNTS IN NAMES OTHER THAN MERCHANTWIRED

Summary judgment is **DENIED** on the issue of whether or not MerchantWired is liable to AT&T for amounts allegedly due on accounts in the name of entities other than MerchantWired because genuine issues of material fact exist.

AT&T seeks to recover amounts from MerchantWired for accounts identified under names other than MerchantWired. AT&T contends that such identifying labels are merely descriptions used to identify the customer of MerchantWired or the location of where the services were to be provided. *Aff. of Gritchen, Ex. 2*. MerchantWired claims that it is not responsible for these accounts. The Master Agreement does not specify the names of the accounts for which MerchantWired is responsible. However, the Master Agreement does provide that MerchantWired will be responsible

11

for any services provided to a "User," which is defined as "anyone who uses or accesses any Service purchased by [MerchantWired] under this Agreement . . . ." *Master Agreement, §§ 1.3, 3.4 Ex. 1.* Thus, the Master Agreement leaves open the possibility that MerchantWired would be responsible for accounts under names other than its own.

Overall, the Court has not been presented with conclusive evidence by either party as to whether or not MerchantWired is liable to AT&T for amounts allegedly due on accounts in the name of entities other than MerchantWired. This is a question for the fact finder to resolve and is not appropriate for summary judgment. As such, summary judgment on this issue is **DENIED**.

### C. QUANTUM MERUIT CLAIM

Summary judgment is **GRANTED** in favor of MerchantWired with respect to AT&T's quantum meruit claim, but it is not granted for the reasons that MerchantWired suggests.

MerchantWired claims that AT&T cannot pursue a claim for quantum meruit because AT&T is seeking to recover the same amounts for the same services it is attempting to recover under its breach of contract claim. AT&T contends that its claim for quantum meruit is an alternative claim upon which relief could be granted in the event that the contracts relied upon by AT&T were found to be invalid. AT&T further contends that since its quantum meruit claim is an alternative claim, there is no threat of double recovery.

Even if an express contract exists, a plaintiff is allowed to plead a quantum meruit claim in the alternative in case the express contract is found to be invalid. Fed. R. Civ. Proc. 8(e)(2); *Diversified Carting, Inc. v. City of New York,* 423 F.Supp.2d 85, 97-98 (S.D. N.Y. 2005). However, at this stage of the proceeding, it is clear that the contracts relied upon by AT&T for recovery will not be invalidated. Neither party disputes the validity or applicability of the Master Agreement or

the June 18, 2002, Agreement. Thus, whereas it was reasonable for AT&T to plead a quantum meruit claim as an alternative to its breach of contract claim, there are no longer any genuine issues of material fact regarding the inapplicability of AT&T's quantum meruit claim in this lawsuit. Therefore, summary judgment on AT&T's quantum meruit claim is **GRANTED** in favor of MerchantWired; AT&T's quantum meruit claim is dismissed with prejudice.

### IV.  CONCLUSION

For the foregoing reasons, both MerchantWired and AT&T's Motions for Summary Judgment are **GRANTED in part and DENIED in part.** Summary judgment on AT&T's quantum meruit claim is **GRANTED** in favor of MerchantWired; AT&T's quantum meruit claim is dismissed with prejudice.

IT IS SO ORDERED this 27th day of October, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed electronically to:

Paul R. Franke III
MURRAY FRANKE GREENHOUSE LIST & LIPPITT LLP
pfranke@mfgll.com

William H. Eikenberry
MURRAY FRANKE GREENHOUSE LIST & LIPPITT LLP
beikenberry@mfgll.com

James A. Smith
SMITH & ASSOCIATES
jim@attorneyjimsmith.com

Charles P. Edwards
BARNES & THORNBURG LLP
charles.edwards@btlaw.com

William A. Hahn
BARNES & THORNBURG LLP
william.hahn@btlaw.com